**BECK & LEE TRIAL LAWYERS**
JARED H. BECK (CA Bar No. 233743)
ELIZABETH LEE BECK (CA Bar No. 233742)
jared@beckandlee.com
elizabeth@beckandlee.com
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Tel:   305-234-2060
Fax:   786-664-3334

*Counsel for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERNST VALERY, on Behalf of Himself, and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY; and WELLS FARGO BANK, N.A.,<br><br>    Defendants. | Case No: 3:20-cv-08874-VC<br><br>**PLAINTIFF'S NOTICE AND MOTION TO DISQUALIFY MCGUIREWOODS, LLP AS COUNSEL FOR DEFENDANTS, WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. AND MEMORANDUM IN SUPPORT**<br><br>Hearing Date:    April 22, 2021<br>Time:            2:00 p.m.<br>Courtroom:       4, 17th Floor<br>Judge:           Hon. Vince G. Chhabria |

### I.     NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiff, Ernst Valery ("Plaintiff" or "Mr. Valery") hereby moves and gives notice of his Motion to Disqualify McGuireWoods, LLP as Counsel for Defendants, Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Defendants" or "Wells Fargo"), to be heard on the Court's motion calendar, April 22, 2021, at 2:00 p.m. EST, or as soon thereafter as may be heard, at Courtroom 4, 17th Floor, via Zoom Webinar before the

Honorable Vince G. Chhabria. The motion will be based on this Notice and Motion, the Memorandum of Points and Authorities below, and the Declaration of Ernst Valery.

## II.   ISSUES TO BE DECIDED

For the reasons set forth in the following memorandum of points and authorities, Mr. Valery seeks an order disqualifying McGuireWoods, LLP from continuing to represent Wells Fargo based on the law firm's concurrent conflict of interest.

## III.   MEMORANDUM

### A.   BACKGROUND AND STATEMENT OF FACTS

SAA|EVI is a branded partnership between two real estate development companies, SAA and EVI, that have financed and developed approximately one billion dollars' worth of real estate throughout the United States since 2010.[1]  Declaration of Ernst Valery ("Valery Decl.") ¶ 3.[2] Plaintiff Ernst Valery owns 51% of SAA of which he is president and co-managing member, as well as 100% of EVI, of which he is president and CEO. *Id.*  Both companies are closely held. *Id.*

As stated in the Complaint ("Compl.") [D.E. 1], Mr. Valery is Black. Compl. ¶ 3. On October 9, 2020, Mr. Valery walked into the Wells Fargo branch nearest to his home in Baltimore, Maryland, with his wife, intending to deposit, in their joint account, a check made out to them from the State of Maryland in the amount of three million dollars. Compl. ¶ 4. The check was payment in connection with a historic tax credit awarded by Maryland for SAA|EVI's transformation of an abandoned Baltimore church into affordable housing with an attached

---

[1]   The full name of SAA is SA+A Development. The full name of EVI is Ernst Valery Investments Corporation. Valery Decl. ¶ 3.

[2]   Filed concurrently as **Exhibit 1**.

brewery.  *Id*. ¶ 4 & Ex. 4.  Although Mr. Valery was a banking customer of Wells Fargo or its predecessor banks since 1991 with over 30 banking and brokerage accounts to his or his company's name, the bank refused to deposit his funds in the Valerys' joint account.  Instead, a bank manager emerged and proceeded to barrage him with a battery of interrogatives questioning his entitlement to the funds and knowledge of what they were for.  *Id.* ¶ 4.  The manager affirmatively suggested that Mr. Valery is not the type of person who should be allowed to possess funds in such an amount. *Id.*  Even after Mr. Valery explained the source of the check and the nature of the tax credit involved, the Wells Fargo manager refused to deposit the funds.  *Id.*  Mr. Valery left the bank unable to deposit the check.  *Id.*  Subsequently, Mr. Valery learned from another Wells Fargo banker that his attempted deposit had been blocked by a Wells Fargo employee known to be a racist.  Valery Decl. ¶ 9.

On December 14, 2020, Mr. Valery filed suit in this Court against Defendants, Wells Fargo & Company and Wells Fargo Bank, N.A.  The Complaint asserts a claim under section 1981 of the Civil Rights Act of 1966, which guarantees all persons within the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]"  42 U.S.C. § 1981; Compl. ¶¶ 23-27.  As alleged, Mr. Valery's experience is another in a recent rash of "banking while Black" incidents where the racist conduct of Wells Fargo has harmed Black banking customers; Mr. Valery seeks damages and injunctive relief on behalf of himself as well as class relief for similarly situated Black banking customers of Wells Fargo.  Compl. ¶¶ 1-2, ¶¶ 13-22.

While the Defendants still have until April 1, 2021, to respond to the Complaint, the law firms of McGuireWoods LLP ("McGuireWoods") and Munger Tolles & Olson LLP ("Munger Tolles") have appeared on behalf of the bank.  *See* Stipulation And Order Extending Time To Respond To The Complaint And Continuing Case Management Conference As Modified [D.E. 9].

However, McGuireWoods is **also currently legal counsel to SAA|EVI** in connection with its renovation of an affordable housing apartment complex in Henrico County, Virginia that Mr. Valery is spearheading.  Valery Decl. ¶¶ 4, 7 & Ex. D.  Moreover, SAA|EVI paid McGuireWoods legal fees to serve as bond counsel at the bond closing for the same apartment development project.  *Id.* ¶ 6.  And SAA|EVI has engaged McGuireWoods' government relations subsidiary, McGuireWoods Consulting, LLC ("McGuireWoods Consulting"), to provide lobbying and coordinating services for the project as well.  *Id.* ¶ 5.

The California Rules of Professional Conduct prohibit a lawyer from representing a client where the representation is "directly adverse to another client in the same or a separate matter" or "if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person," unless informed, written consent is obtained.  Cal. R. Prof. Conduct 1.7(a)-(b) (2020).  Here, McGuireWoods' representation of Wells Fargo in this action is directly adverse to Mr. Valery and SAA|EVI, the latter of which McGuireWoods is concurrently representing with respect to the Virginia apartment development.  Furthermore, there is a significant risk that McGuireWoods' representation of Wells Fargo will be materially limited by the firm's responsibilities to and relationships with Mr. Valery and SAA|EVI.  Mr. Valery and SAA|EVI have never been asked for their consent to McGuireWoods' representation of Wells Fargo in this action, nor would they have given consent had they been asked.  Valery Decl. ¶ 8.

Under California law, the remedy for a direct, concurrent conflict in client loyalties is per se disqualification, to avoid undermining public confidence in the legal profession and judicial process as well as to protect a client's legitimate expectations of loyalty.  Accordingly, and as

discussed in further detail below, the Court should grant Mr. Valery's motion for disqualification of McGuireWoods.

**B.      LEGAL STANDARD**

Federal courts in California apply state law to decide motions to disqualify. *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at * 1 (N.D. Cal., Mar. 31, 2011) (citing *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). Pursuant to Rule 11–4 of the Civil Local Rules of the Northern District of California, attorneys practicing in this district are required to adhere to "the standards of professional conduct required of members of the State Bar of California," which are found in "the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any court." Civ. L.R. 11–4 and comment; *see also Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).

Under California law, "the propriety of disqualification depends on the circumstances of the particular case in light of competing interests." *The Oaks Mgmt. Corp. v. Super. Ct.*, 145 Cal. App. 4th 453, 464–65, 51 Cal. Rptr. 3d 561 (2006) (citing *William H. Raley Co. v. Super. Ct.*, 149 Cal. App. 3d 1042, 1048, 197 Cal. Rptr. 232 (1983)). "The court must weigh the combined effects of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest." *Raley*, 149 Cal. App. 3d at 1048, 197 Cal. Rptr. 232.

The decision to disqualify counsel lies within the discretion of the trial court as an exercise of its inherent powers. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996); *Image Technical*

*Serv., Inc. v. Eastman Kodak Co.*, 820 F. Supp. 1212, 1215 (N.D. Cal.1993); and Cal. Code Civ. Proc. § 128(a)(5)).  Because motions to disqualify are often tactically motivated, they are strongly disfavored and are subjected to "particularly strict judicial scrutiny."  *Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted).

Nonetheless, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428, 86 Cal. Rptr. 2d 20 (1999). "Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *Id.*

**C.    ARGUMENT**

    **1.    Plaintiff Has Standing To Seek McGuireWoods' Disqualification Due To Mr. Valery's Ownership Interest In SAA|EVI**

As an initial matter, Mr. Valery has standing to seek McGuireWoods' disqualification based on the firm's concurrent representation of SAA|EVI in another legal matter.  Mr. Valery owns 51% of SAA, 100% of EVI, and serves as president/co-managing member and president/CEO of the two companies, respectively.  Valery Decl. ¶ 3.  Under California law, his ownership interest in SAA|EVI affords him "vicarious standing" to seek McGuireWoods' disqualification based upon SAA|EVI's attorney-client relationship with McGuireWoods.  *See Stiletto Television, Inc. v. Hastings, Clayton & Tucker, Inc.*, 2019 WL 3249599, *2 (C.D. Cal. May 21, 2019) (one of corporation's three equal shareholders had vicarious standing to move for disqualification of corporation's law firm); *Ontiveros v. Constable*, 245 Cal. App. 4th 686, 698-99, 199 Cal. Rptr. 3d 836 (2016) (minority shareholder in corporation had vicarious standing to seek disqualification of attorneys who represented the corporation); *Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 482, 485-86, 192 Cal. Rptr. 3d 641 (2011) (fifty percent

member of limited liability company had vicarious standing to seek disqualification of attorney who represented the LLC).

Moreover, even if Mr. Valery did not have vicarious standing to move for disqualification of McGuireWoods (which he in fact has), he has standing under *Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999), which states an exception to the general rule that only an attorney's client or former client can move to disqualify the attorney: namely, "where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims." *Id.* at 969. "Courts have invoked the exception in *Colyer* where particular facts have established that the party seeking disqualification had a personal stake beyond the general interest in the fair administration of justice." *S.E.C. v. King Chuen Tang*, 2011 WL 5914028, at *12 (N.D. Cal. Nov. 28, 2011 (citing *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 818 (N.D. Cal. 2004) (holding that non-client had standing where alleged conflict arose out of concurrent representation and third party had formerly had an ownership interest in the company that was seeking disqualification); *Decaview Dist. Co., Inc. v. Decaview Asia Corp.*, 2000 WL 1175583, at *4 (N.D. Cal. Aug. 14, 2000) (holding that non-client could bring a motion to disqualify where moving party's confidential information was in the possession of opposing counsel as a result of a prior representation by opposing counsel) (citations partially omitted)). In *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2012 WL 2343908 (N.D. Cal. June 20, 2012), this district applied the *Colyer* exception to hold a corporation had standing to move for disqualification of a law firm from defending its adversary in a patent dispute where the firm also represented the corporation's individual owners in connection with estate planning services, a prenuptial agreement, and a draft buy-sell agreement concerning the owners' respective shares in the company. *Id.* at *1-*2, *7-*8. The *TransPerfect* court found the corporation to have standing

because the law firm's representation of the corporation's controlling owners was "'inextricably intertwined' with the business of the company." *Id.* at *8 (citing *Concat*, 350 F. Supp. 2d at 818-19; *Colyer*, 50 F. Supp. 2d at 971).

Likewise, McGuireWoods' representation of SAA|EVI is "inextricably intertwined" with Mr. Valery's affairs. Mr. Valery is a real estate developer in the field of affordable housing with controlling interests in two closely held real estate companies, SAA and EVI. McGuireWoods' legal representation of these companies involves the development of an affordable housing project in Henrico County, Virginia that Mr. Valery is spearheading. Accordingly, in addition to vicarious standing, Mr. Valery has standing to seek McGuireWoods' disqualification under *Colyer* and its progeny.[3]

### 2. McGuireWoods' Representation Of SAA|EVI And Wells Fargo Constitutes A Direct, Concurrent Conflict In Client Loyalties Warranting Per Se Disqualification

The California Rules of Professional Conduct "forbid[] lawyers in California from simultaneously representing two clients that are adverse to each other, even where the adversity arises in two unrelated matters, unless the lawyer fully discloses the conflict and obtains a waiver in writing." *TransPerfect*, 2012 WL 2343908, at *6 (citing *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 284–86, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (1994) (holding that "[e]ven though the simultaneous representations may have nothing in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may

---

[3] The Central District of California recently observed that "courts in this circuit also recognize they have the inherent power to disqualify counsel, and such power can be exercised *sua sponte*." *Stiletto Television*, 2019 WL 3249599, at *2 (citations omitted). Thus, notwithstanding the fact Mr. Valery clearly does have standing, his standing "is not a prerequisite to the Court's consideration of disqualification. . . . Even if he does not, the Court has inherent power to determine whether [the law firm] should be disqualified." *Id.*

nevertheless be *required*") (emphasis in original)). "The reason for the prohibition is the attorney's duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." *TransPerfect*, 2012 WL 234908, at *6 (citations omitted). "The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *Id.* (citations and internal quotation marks omitted).

Here, McGuireWoods' simultaneous representation of Wells Fargo and SAA|EVI plainly breaches the duty to maintain undivided loyalty to its clients. Because Mr. Valery is sole owner of EVI and owns more than half of SAA, McGuireWoods cannot represent his adversary in this proceeding, Wells Fargo, as a matter of law. *See Woods v. Super. Ct.,* 149 Cal. App. 3d 931, 935-37,197 Cal. Rptr. 185 (1983) (holding that attorney could not simultaneously represent corporation and adversary of owner of corporation in marital dissolution proceeding).

> It has long been recognized that where ethical considerations are concerned, disqualification should be ordered not only where it is clear that the attorney *will* be adverse to his former client but also where it *appears* that he *might*. . . . Moreover, the purpose of the rules against representing conflicting interests is not only to prevent dishonest conduct, but also to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests.

*Id.* at 936 (citations omitted) (emphasis in original). "Disqualification is proper here to avoid any appearance of impropriety." *Id.*; *see also TransPerfect*, 2012 WL 2343908, at *14 ("Once a client engages a lawyer, that client must be able to expect undivided loyalty. McDermott's concurrent representation—which has already resulted in McDermott deposing its own client, Shawe—does not fulfill this expectation. Unfortunately for McDermott, 'in California, the solution to a direct, concurrent conflict in client loyalties is per se disqualification.'" (quoting *Fujitsu Ltd. V. Belkin Int'l, Inc.*, 2010 WL 5387920, *9 (N.D. Cal. Dec. 22, 2010)).

### 3. The Conflict Has Not Been Waived

Setting aside the issue of whether McGuireWoods' conflict is even waivable, Mr. Valery and SAA|EVI were never asked to provide informed written consent nor did they provide such consent, as would be required under California Rule of Professional Conduct 1.7 to undertake the firm's patently conflicting representation of Wells Fargo in this action. Valery Decl. ¶ 8.

### 4. There Are No Delay, Disruption, Or Policy Concerns With Disqualifying McGuireWoods From Continuing To Represent Wells Fargo

There are absolutely no concerns with delay or prejudice to Wells Fargo in connection with disqualifying McGuireWoods. This case is in its infancy – Wells Fargo has not yet responded to the complaint; the Rule 26 conference has not occurred, nor has there been any discovery. What is more, "delay and prejudice alone, without a suggestion of tactical abuse, does not appear sufficient to deny a disqualification motion based on concurrent representation," (*TransPerfect*, 2012 WL 2343908, at *11), and Mr. Valery is not bringing this motion for tactical reasons but to protect his reasonable expectation of undivided loyalty from a law firm he hired as a real estate developer protecting his business interests. Furthermore, any prejudice to Wells Fargo from having to secure replacement counsel at this stage is *de minimis* at best, especially given that it is already represented in this action by adequate counsel, Munger Tolles & Olson LLP.

### D.   CONCLUSION

For the reasons stated above, this Court should enter an order disqualifying and enjoining McGuireWoods LLP from continuing to represent Wells Fargo in this action.

DATED: March 18, 2021

                                            Respectfully submitted,

                                            /s/ Jared H. Beck
                                            Jared H. Beck
                                            Counsel for Plaintiff and Putative Class